# AFFIDAVIT OF JUANITA VILLANUEVA

STATE OF TEXAS        \*
                                 \*
COUNTY OF HARRIS    \*

On this day, JUANITA VILLANUEVA appeared before me, the undersigned notary public, and after I administered an oath to her, upon her oath, she said:

"My name is Juanita Villanueva. I am over eighteen (18) years of age, of sound mind, and competent to make this affidavit. The facts stated in this affidavit are within my personal knowledge and are true and correct.

I am the sister of Jorge Villanueva, the Applicant in Cause No. 730975-A, Ex Parte Jorge Villanueva, in the 208th District Court of Harris County, Texas.

In June, 1996, I met attorney Philip Campa at his office. Also present were Jorge Villanueva's wife, Irma Rodriguez, and his daughter, Wendy Rodriguez. During the meeting Philip Campa agreed to represent Jorge Villanueva in Cause No. 730975, The State of Texas v. Jorge Villanueva, in the 208th District Court of Harris County. I asked Philip Campa how much it was going to cost to represent my brother. He answered that it would cost Two Thousand Dollars ($2,000.00) and agreed to represent my brother for the single fee of Two Thousand Dollars ($2000.00). Philip Campa explained that the fee was low because I and my friend Gloria Medellin had referred clients to him in the past, because my brother was a poor Hispanic, and because representing him in a capital murder case was an opportunity to enhance Mr. Campa's reputation as a lawyer. A contract was signed by Irma Villanueva and I paid Philip Campa Two Thousand Dollars ($2,000.00) in cash. He gave me a receipt for that amount. At no time in the meeting did Philip Campa discuss any costs or expenses that would be or might be incurred in representing Jorge Villanueva. Philip Campa did not discuss any need for investigators, expert witnesses, consultants, or other counsel who he might want to retain to assist in the case.

One week later, at Philip Campa's request I and Irma Rodriguez met him again at his office. He said that he had already met my brother. At that time he asked me for Five Thousand Dollars ($5,000.00) to hire an investigator and an expert in DNA. He said that it would not be necessary for me to give him money for a psychologist expert because the Court had already paid for a psychologist. I told him that I needed time to secure such an amount. He said I could pay it on or before the first day of the trial in the case.

One week later (or, that is, two weeks after the first meeting) I and Irma Rodriguez again met Philip Campa at his request at his office. He explained that it was necessary for him to hire another attorney to assist him and the other attorney, a white female, wanted to be paid Three



Thousand Dollars ($3,000.00).

Two days later I and Irma Rodriguez met with Philip Campa again at his request. He said that the case would cost Ten Thousand Dollars ($10,000.00) including the costs and fees for expert witnesses including a DNA expert, an investigator, and another attorney to assist him. He did not ask to be paid then and left it to my decision whether or not another lawyer would be hired to assist him, although he said that it would 'look good' to the jury for my brother to have a white, female attorney in court with him. I told him I had no money for an additional lawyer. He asked me if I could have $5,000.00 by the first day of trial and said that if that sum was not paid by the first day of trial he would not be able to proceed.

On October 1, 1996, the first day of the trial in the case, in the courtroom of the 208th District Court, I gave Philip Campa a certified check for Five Thousand Dollars ($5,000.00). He did not give me a receipt. The certified check was purchased by Gloria Medellin with her own funds and was payable to Philip Campa.

Philip Campa was paid Seven Dollars ($7,000.00). Of that sum, Two Thousand Dollars ($2,000.00) was for Philip Campa's fee for professional services and the rest was for obtaining an investigator, experts, and the assistance of other counsel.

I have read a copy of the Affidavit of Trial Counsel putatively prepared by Philip Campa. I make this affidavit to refute and controvert the following statements in the Affidavit of Trial Counsel: 'It was agreed that attorney fees would be approximately $10,000.00,' 'I informed the family and Mr. Villanueva that the money was for attorney fees only,' and 'I did not hire any experts because the accused informed me that his family could not afford any. This was also in line with the fact that a balance remains on the attorney fees of $2,000.00 which was never paid.'"

FURTHER AFFIANT SAITH NOT.

_____
Juanita Villanueva

SWORN TO AND SUBSCRIBED before me by Juanita Villanueva on this the _____ day of December, 2000.

Johnny Buenrostro
Notary Public
State of Texas
My Commission Expires
October 17, 2002

_____
Notary Public in and for
The State of Texas

000211