## AFFIDAVIT OF JORGE VILLANUEVA

STATE OF TEXAS      *
                               *
COUNTY OF POLK     *

On this day, JORGE VILLANUEVA appeared before me, the undersigned notary public, and after I administered an oath to him, upon his oath, he said:

"My name is Jorge Villanueva. I am over eighteen years of age, of sound mind and competent to make this affidavit. The facts stated in this affidavit are within my personal knowledge and are true and correct.

I am the Applicant in Cause No. 730975-A, Ex Parte Jorge Villanueva, in the 208th District Court of Harris County, Texas.

On August 20 or 21, 1996, I met Philip Campa for the first time in the Harris County Jail. Mr. Campa informed me that my wife Irma Rodriguez and my sister Juanita Villanueva had retained him to represent me in Cause No. 730975, The State of Texas v. Jorge Villanueva, in the 208th District Court of Harris County, Texas. He told me that he charged them a fee of two thousand dollars ($2,000.00) and "that was pretty cheap for a capital case." He explained that he was taking the case for "so little money" because my brother-in-law Eduardo Munoz was doing automobile repair, yard maintenance, and other odd jobs for him; and because my sisters Juanita Villanueva and Francis Munoz had referred clients to him. He asked me to sign a Motion for Substitution of Counsel and I did. I tried to discuss with him all the facts and details of the case including the events, facts and circumstances about my arrests and the statements I gave or allegedly gave to the police. The only things Mr. Campa asked me about were where was I on August 27 and 28, 1994, who was I with, what was I doing, what was my relationship with Jova Montiel and Lazaro Aguilar, what my other attorneys had advised about me testifying at trial, and whether I gave statements to the police voluntarily. I answered each of his questions. I told him that the first statement I gave police was given voluntarily but that the second statement given in October, 1994, was not made voluntarily and that the words in it were not mine. I told him that the second statement was made by the police at a time when I was suffering from withdrawal from heroine. He never brought up the subject of the statements again. He refused to listen to everything I wanted to tell him about the case. He did not discuss what he was going to do to prepare for trial. Mr. Campa made no notes or tape recording of our conversation. The meeting lasted only twenty to thirty minutes.

On August 22, 1996, I was in court with Mr. Campa in a hearing on the Motion for


EXHIBIT Supp. 3

000212

Substitution of Counsel. Mr. Campa did not discuss the facts or details of the case with me at all during the time we were in court or any other time that day. However, my wife and sister who were present in the courtroom informed me that Mr. Campa would be paid $5,000.00 dollars to hire an investigator and expert witnesses including a DNA expert.

I did not see Philip Campa again until September 9, 1996, when he appeared in court with me for a hearing on the Motion to Suppress the Confession. Between August 22, 1996, and September 9, 1996, I had no communication or contact with Philip Campa. I received neither messages nor information from him either by mail or through any relative of mine or any associate or employee of his. Philip Campa did not meet with me to prepare for the hearing on the Motion to Suppress the Confession nor did he ever discuss the Motion with me. The hearing on the Motion to Suppress the Confession was held on September 9 and 10, 1996. At no time on those days, during the hearing or at any other time did Philip Campa discuss with me the facts, circumstances, events, and details of the case. I tried to talk to him about all aspects and details of the case and the trial. He refused to talk to me except to say that he had a strategy on how to fight the case, though he never told me what the strategy was. Nor did he discuss trial preparation or anything else related to the trial with me on those days. Furthermore, I wanted to testify at the hearing on the Motion to Suppress the Confession. I told him so. However, without discussing the matter with me, he simply did not call me to testify on my own behalf. He did not explain why I should or should not testify. He acted against my wishes without explanation.

During the voir dire of possible jurors, Philip Campa did not discuss with me any aspect of the jury selection. There was no discussion with him about my thoughts or feelings about the prospective juror because he refused to talk to me about it. He ignored my effort to talk to him about this. His only comment to me about jury selection was, "Trust me. I know how to pick the jury."

I have read the Affidavit of Trial counsel putatively prepared by Philip Campa. I make this affidavit to refute and controvert the following statements in the Affidavit of Trial counsel:

'I informed the family and Mr. Villanueva that the money was for attorney fees only.'

'I did discuss the case and related issues with the accused prior to the August 22, 1996 substitution hearing.'

'I did not hire any experts because the accused informed me that his family could not afford any.'

'It is my recollection that on August 21, and again on August 22, 1996, I did discuss all details of the case with the accused.'

'I conferred throughout the two day hearing with my client and used every minute to also discuss trial preparation with him.'

'It also should be mentioned that throughout the voir dire, I regularly discussed with my client his feelings and views on each candidate.'

'As to an investigation in preparation for the Motion to Suppress the Confession, I did review the State's file at length several times. I also met with my client in preparation for the hearing. . . . I elected, after talking with the accused, that he should not testify at the hearing.'

'I did not have the benefit of a private investigator because my client did not have the funds available.'"

FURTHER AFFIANT SAITH NOT.

*Jorge Villanueva*
Jorge Villanueva

SWORN TO AND SUBSCRIBED before me by Jorge Villanueva on this the __6__ day of December, 2000.

[Notary Seal: RICHARD MCKEE, Commission Expires 5-26-2003]

*Richard McKee*
Notary Public in and for
The State of Texas

000214